# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN GALLAGHER,** | : | **No. 3:06cv1626** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF DICKSON CITY,** | : | |
| **ROBERT WILTSHIRE, Individually** | : | |
| **and in his capacity as councilman,** | : | |
| **ANTHONY GALLIS, Individually and** | : | |
| **in his capacity as councilman,** | : | |
| **WILLIAM BOTT, Individually and in** | : | |
| **his capacity as councilman, and** | : | |
| **PETER NOVAJOSKY, Individually** | : | |
| **and in his capacity as councilman,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is defendants' motion to dismiss (Doc. 10) the plaintiff's complaint (Doc. 1). Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

Plaintiff Karen Gallagher worked for the Borough of Dickson City ("Borough") as a part-time police officer from January 2004 until the Borough terminated her employment on February 8, 2005. (Complaint (Doc. 1) (hereinafter "Complt") at ¶¶ 11, 17). At the time she lost her job, plaintiff was the only woman working for the Police Department ("Department"). (Id. at ¶ 13). Plaintiff alleges that while she

worked for the Department she was subjected to harassing conduct from Dave Spinello, who was a full time police officer.  (Id. at ¶ 14).  According to the plaintiff, Officer Spinello: told her that instead of working in the Department she should be featured in a "partially nude girly calendar" that was posted there; opined that women should not be working in law enforcement; called women "broads" and "chicks"; called her a "broad" and a "chick"; told plaintiff she should be the Department's secretary; informed plaintiff that the last "broad" who worked in the Department had fetched his radio for him; and told the plaintiff that "broads" should be in the kitchen. (Id.).

Plaintiff complained about these comments to the Borough, suggesting that they created a hostile work environment.  (Id. at ¶ 15).  According to her complaint, Defendants Wiltshire, Gallis, Novajosky and Bott, who were members of the City Council, knew that Officer Spinello had engaged in this conduct.  (Id. at ¶ 16).  They refused to take any action to correct the situation.  (Id. at ¶ 17).  Instead, the Borough Council fired the plaintiff.  (Id.).  After the Council fired her, the Borough hired two male part-time officers.  (Id. at ¶ 18).

On August 21, 2006, plaintiff filed the instant complaint against the Borough, Wiltshire, Gallis, Novajosky and Bott.  The complaint named the individual defendants both in their individual and official capacities.  Count I of the complaint alleges a violation of plaintiff's right to equal protection pursuant to 42 U.S.C. § 1983. That count also alleges a violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e *et seq.*  Plaintiff claims the Borough discriminated against her in employment because of her gender.[1]  These allegations appear to arise out of the Borough's failure to remedy the harassment plaintiff faced from officer Spinello. Count II alleges an equal protection violation and a violation of Title VII through retaliation by the Borough for plaintiff's complaints about Spinello's behavior. Plaintiff contends that her firing constituted this retaliation.  Count III, brought under the Pennsylvania Human Relations Act ("PHRA"), 43 PENN. STAT. ANN. §§ 955 *et seq.*, alleges gender discrimination, harassment and retaliation against the Borough. Count IV alleges individual liability under the PHRA against all the individual defendants.  Count V is a first amendment retaliation claim, alleging that defendants fired plaintiff after she raised a matter of public concern.  Plaintiff presumably brings this claim pursuant to 42 U.S.C. § 1983.  Count VI alleges that the Borough failed to train employees and agents not to sexually harass fellow employees and to correct such situations when they occurred.

Plaintiff filed the instant motion to dismiss on October 16, 2006.  After the parties briefed the issue, we held oral argument on June 14, 2007 bringing the case to its present posture.

**Jurisdiction**

---

[1]The complaint also appears to allege a violation of the Pennsylvania Constitution on this count.  (See Complt. at ¶ 19 (claiming that "[p]laintiff seeks all remedies available pursuant to [42] U.S.C. ¶ 1983 and [the] Pennsylvania Constitution.")).  Plaintiff does not explain, however, which rights guaranteed under the Pennsylvania Constitution defendants violated.

As this case is brought pursuant to 42 U.S.C. §§ 1983 and 2000e for constitutional and statutory violations we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

Defendants seek to dismiss portions of plaintiff's complaint on several grounds.  We will address each of those grounds in turn.

**a.  Failure properly to assert jurisdiction**

4

Defendants contend that plaintiff has improperly asserted jurisdiction.  Her complaint alleges that "jurisdiction lies pursuant to . . . 42 U.S.C. § 1983 for federal and state constitutional violations of Plaintiff OFFICER GALLAGHER's rights to Equal Protection of the Law, First Amendment retaliation, gender discrimination/harassment pursuant to 42 U.S.C. § 2000e, *et seq*., retaliation and state claims under the Pennsylvania Human Relations Act."  Defendants contend that plaintiff has not properly asserted this court's jurisdiction over her state law claims in this statement.  Plaintiff disagrees, but nonetheless offers to restate jurisdiction in an amended complaint, making reference to the federal statutes which provide her jurisdiction.  Since the parties have agreed that the statement of jurisdiction is inadequate, we will allow the plaintiff to amend her complaint to state jurisdiction more properly.  Plaintiff is directed to restate jurisdiction in that complaint, making reference to the federal statutes that confer jurisdiction over her claims in this case.  See 28 U.S.C. §§ 1331, 1367(a).

## b.  Official Capacity Claims

Plaintiff raises claims against the individual defendants in their official capacities as members of the Borough Council.  At the same time, the complaint includes a footnote that declares "[p]laintiff notes that the individuals are being sued in their capacity as Council members for clarity and acknowledges that suit against the individuals in their official capacity is suit against the municipality.  Additionally, Plaintiff is suing the individuals in their personal capacity."  (Complt. at p. 2 n.1).

5

Defendants point out that they cannot be sued in their official capacities.  Plaintiff appears to agree, but argues that defendants' motion is moot on this point, since she states in her complaint that she does not intend to sue the individual defendants in their official capacities.  Because we agree that defendants cannot be liable under Section 1983 in their official capacities, and because of a desire to clarify the issues in the lawsuit, we will grant the defendants' motion to dismiss the claims against them in their official capacities.  See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991) (holding that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State.").

## c.  Municipal Liability

### i.  General Municipal Liability

Defendants argue that plaintiff's section 1983 claims against the Borough should be dismissed because plaintiff has failed sufficiently to allege a policy or custom by the Borough that led to the violation of plaintiff's rights.  The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  City of Canton v. Harris, 489 U.S. 378, 389 (1989).  Further, "[w]hen a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held

6

liable solely for the conduct of its employee." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997).   These strict standards exist because "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 399 (1997).

In order to prevail on such a claim, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Id.</u> at 403.  Liability attaches either to an official policy or to a "custom" that constitutes a "practice . . . so widespread as to have the force of law." <u>Id.</u> at 404.  In the context of a motion to dismiss a plaintiff "must allege that a 'policy or custom' of [the defendants] was the 'moving force' behind a violation of his . . . rights." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 107 (3d Cir. 2002) (citing <u>Brown</u>, 520 U.S. at 404).

Plaintiff argues that the Borough's decision to terminate her constitutes an official policy and exposes Dickson City to liability for that claim.  Defendants do not respond to this contention in their reply brief.  We read plaintiff's claim to allege that the Borough fired her as a result of a municipal practice that ignored and perhaps tacitly encouraged harassing behavior towards women in the Police Department.  A particular decision, like a decision to fire an employee, can give rise to municipal liability under Section 1983.  A single decision can constitute a policy, since "'[p]olicy

7

is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.'" Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (internal quotation marks omitted).  Since plaintiff alleges that the Borough Council made the decision to terminate the plaintiff, she has properly alleged that a Borough policy caused her injury.  We will therefore deny defendants' motion to dismiss on this point.

### ii.  Failure to Train

Defendants also seek to dismiss plaintiff's failure-to-train claim.  When a plaintiff asserts liability on the basis of a failure to train, "[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). The Third Circuit Court of Appeals has noted that "liability" for failure to train "could be imposed 'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988).  In Colburn, the Court concluded that plaintiff's allegations "that defendants had a custom of inadequately

8

monitoring the jails for potential suicides" properly stated a failure-to-train claim against a prison but that an allegation that a failure "to train police officers . . . in proper search techniques" did not.  Id. at 673.  That case concerned a prison suicide where the decedent had secreted a handgun in her clothing and searches at the jail failed to discover it.  Id. at 665.  She then shot herself.  Id.  Because the plaintiff offered no evidence of other such occurrences, the court found no basis "to support maintaining this action on the basis of inadequate training."  Id. at 673.

Plaintiff has pointed to specific, systematic failings by the Borough in training employees to prevent incidents of sexual harassment.  She alleges that she made the Borough aware of the offending comments, and that officials did nothing to address Officer Spinello's behavior.  These actions, she contends, provided a tacit endorsement for such harassing activities.  If, after discovery, plaintiff can demonstrate that the Borough was aware of the offensive conduct of which she claims and did not provide any training to address such situations, she could prevail on this portion of her claim.  Accordingly, we will deny defendants' motion to dismiss on this issue.

**d.  Punitive Damages**

Plaintiff seeks punitive damages from all of the defendants, including the Borough.  Defendants challenge this claim, contending that Section 1983, Title VII and the PHRA all forbid punitive damages against a municipality and against individuals acting in their official capacity.  Plaintiff concedes that she cannot obtain

9

punitive damages against a municipality, and we will therefore dismiss her claim for

punitive damages against the Borough.  Since we will dismiss the claims against the

individual defendants in their official capacities, we will also dismiss claims for

punitive damages against them in their official capacities.  Neither side has argued

that plaintiff could not obtain punitive damages against the individual defendants in

their individual capacities if she provided sufficient evidence.  Accordingly, plaintiff's

punitive damage claims against the individual defendants acting in their individual

capacities will remain in the case.

**e.  Equal Protection**

Defendants seek dismissal of plaintiff's equal protection claims in Counts I and

II.  Defendants assert that plaintiff cannot prevail on an equal protection claim

because she has not alleged that others similarly situated and not in her protected

class were treated more favorably than her.  "To bring a successful claim under 42

U.S.C. § 1983 for denial of equal protection, plaintiffs must prove the existence of

purposeful discrimination."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d

Cir. 1990).  Further, the plaintiff must alleged that she "'received different treatment

from that received by other individuals similarly situated.'" Id. (quoting Kuhar v.

Greensburg-Salem School Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980)).  In a case of

sex discrimination, the "disparate treatment" must be "based upon her gender."  Id.

Plaintiff here apparently contends that the Borough treated her differently on

the basis of her sex.  She points to two male officers were subsequently hired for the

10

same part-time job she lost.  Assuming that plaintiff after discovery plaintiff could

produce evidence that demonstrated that defendants were motivated to make their

hiring decisions based on the plaintiff's gender, she could prevail on her equal

protection claim.  We will therefore deny defendants' motion to dismiss on this point.

**f.  First Amendment Retaliation**

Defendants argue that plaintiff has not stated a claim for First Amendment

retaliation.  "'A public employee has a constitutional right to speak on matters of

public concern without fear of retaliation.'" Brennan v. Norton, 350 F.3d 399, 412 (3d

Cir. 2003) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001).

Courts limit this right to speech by public employees, however; they employ a three-

part test to determine whether such speech enjoys First Amendment protection

against retaliation.  First, they determine whether the speech is "protected."  Id.

"Purely personal" speech does not qualify for such protection.  Id.  Instead, "the

speech in question 'must involve a matter of public concern.'"  Id.  (quoting Connick v.

Meyers, 461 U.S. 138, 147 (1983)).  Second, if the speech in question involves a

matter of public concern, "the plaintiff must then 'demonstrate his[/her] interest in the

speech outweighs the state's countervailing interest as an employer in promoting the

efficiency of the public services it provides through its employees.'"  Id at 413

(quoting Baldassare, 250 F.3d at 195).  Third, a plaintiff who meets the first two

elements of this test "'must then show that the protected activity was a substantial or

motivating factor in the alleged retaliatory action.'"  Id. at 414 (quoting Baldassare,

11

250 F.3d at 195).  An employer can rebut this element by demonstrating that the employment decision would have been the same even without the protected speech. Id.

Here, the question we face is whether plaintiff has alleged that her speech addressed a matter of public concern protected by the First Amendment. Plaintiff's speech consisted of a complaint about sexual harassment aimed at her by a fellow police officer.   Determining that speech addresses a matter of public concern requires an evaluation of "'the content, form, and context of a given statement, as revealed by the whole record.'" Rode v. Dellarciprete, 845 F.2d 1195, 1201 (3d Cir. 1988) (quoting Connick v. Meyers, 461 U.S. 138, 147-48 (1983)).  In a general sense, courts have found that "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not."  Swineford v. Snyder County, 15 F.3d 1258, 1271 (3d Cir. 1994) Still, a public employee could both raise an personal employment issue and a matter of public concern, especially when that personal employment issue addresses a "grave public concern," such as racial prejudice.  Rode, 845 F.2d at 1201.  Defendants argue that because the plaintiff's alleged harasser was not a supervisor or an elected official but a fellow police officer, the incident was an internal agency event, not a matter of public interest.

In Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997), the Third Circuit Court of Appeals concluded that a woman's reports of sexual harassment by

12

an executive assistant to a county commissioner addressed a matter of public concern and qualified as protected speech. Id. at 978. In that case, the plaintiff went to the executive assistant's office to discuss a workplace conflict between the plaintiff's husband and another county employee. Id. at 970. During this meeting, the executive assistant behaved in a sexual aggressive and offensive manner toward the plaintiff, attempting to touch her inappropriately and making obscene gestures. Id. The plaintiff claimed she was eventually fired for reporting this incident. Id. at 972. The court found that such harassment was a form of "gender discrimination" and that such "discrimination, when practiced by those exercising authority in the name of a public official"[2] constituted "a matter of public concern." Id. In this case, plaintiff complained to the Borough Council about discriminatory and harassing behavior by a police officer, a public official. While this police officer did not have the authority to hire or fire the plaintiff, his alleged conduct certainly reveals discrimination on the part of an official in which the public would have a legitimate interest. The public has an interest in the equal enforcement of the laws, and therefore has an interest in whether those enforcing the laws reject the ideal of equal treatment for all. Plaintiff has sufficiently alleged that her speech to Borough council

---

[2]The court noted that a different evaluation could be required "with a situation in which a public employee has filed a complaint about an isolated incident of what he or she perceived to be inappropriate conduct on the part of a non-supervisory co-worker. While we express no opinion on such a situation, it would presumably be less important to an evaluation of the performance of the public office involved than the situation now before us." Azzaro, 110 F.3d at 978 n.4.

13

members addressed a matter of public concern.

Defendants' motion addresses only whether plaintiff has met her burden to demonstrate that her speech addressed a matter of public concern.  Because we have found that her speech does address such a matter, and because she lost her job after complaining about that matter, we will deny defendants' motion to dismiss on these grounds.

**Conclusion**

For the above stated reasons, we will grant in part and deny in part defendants' motion to dismiss plaintiffs complaint.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN GALLAGHER,** | : | **No. 3:06cv1626** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF DICKSON CITY,** | : | |
| **ROBERT WILTSHIRE, Individually** | : | |
| **and in his capacity as councilman,** | : | |
| **ANTHONY GALLIS, Individually and** | : | |
| **in his capacity as councilman,** | : | |
| **WILLIAM BOTT, Individually and in** | : | |
| **his capacity as councilman, and** | : | |
| **PETER NOVAJOSKY, Individually** | : | |
| **and in his capacity as councilman,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 29th day of August 2007, defendants' motion to dismiss

the plaintiff's complaint (Doc. 10) is **GRANTED** in part and **DENIED** in part, as

follows:

1) Plaintiff is **DIRECTED** to file an amended complaint within ten (10) days

which properly asserts the jurisdiction of this court;

2) Defendants' motion to dismiss plaintiff's claims against the individual

defendants in their official capacities is **GRANTED**;

3) Defendants' motion to dismiss plaintiff's Section 1983 claims against the

15

Borough of Dickson City is **DENIED**;

4) Defendants' motion to dismiss plaintiff's failure-to-train claim against the Borough of Dickson City is **DENIED**;

5) Defendants' motion to dismiss punitive damages against the Borough of Dickson City and against the individual defendants in their official capacities is **GRANTED**;

6) Defendants' motion to dismiss plaintiff's equal protection claims is **DENIED**; and

7) Defendants' motion to dismiss plaintiff's First Amendment retaliation claim is **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**